UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
AT LEXINGTON

CIVIL ACTION NO. 14-267-DLB

MARY FOX                                                                                      PLAINTIFF

vs.            **MEMORANDUM OPINION AND ORDER**

CAROLYN W. COLVIN,
**Commissioner of Social Security**                                                DEFENDANT

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of an administrative decision of the Commissioner of Social Security. The Court, having reviewed the record, will affirm the Commissioner's decision, as it is supported by substantial evidence.

**I.   FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

Plaintiff Mary Fox applied for disability insurance benefits ("DIB") and supplemental security income ("SSI") on April 25, 2011, alleging a disability onset date of August 12, 2008. (Tr. 11). Plaintiff asserts that she is unable to work because of depression and anxiety. (Tr. 748). Her applications were denied initially and on reconsideration. (Tr. 11) On October 22, 2012, Administrative Law Judge Roger L. Reynolds conducted an administrative hearing at Plaintiff's request. (*Id.*) ALJ Reynolds ruled that Plaintiff was not entitled to DIB or SSI on December 20, 2012. (Tr. 23). This decision became the final decision of the Commissioner when the Appeals Council denied review on August 21,

1

2013. (Tr. 11).

On July 6, 2014, Plaintiff filed the instant action. (Doc. # 1). This matter has culminated in cross motions for summary judgment, which are now ripe for the Court's review. (Docs. # 12 and 13).

## II. DISCUSSION

### A. Overview of the Process

Judicial review of the Commissioner's decision is restricted to determining whether it is supported by substantial evidence and was made pursuant to proper legal standards. *See Cutlip v. Sec'y of Health & Human Servs.,* 25 F.3d 284, 286 (6th Cir. 1994). "Substantial evidence" is defined as "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* Courts are not to conduct a *de novo* review, resolve conflicts in the evidence, or make credibility determinations. *Id.* Rather, we are to affirm the Commissioner's decision, provided it is supported by substantial evidence, even if we might have decided the case differently. *See Her v. Comm'r of Soc. Sec.,* 203 F.3d 388, 389-90 (6th Cir. 1999).

The ALJ, in determining disability, conducts a five-step analysis. Step 1 considers whether the claimant is still performing substantial gainful activity; Step 2, whether any of the claimant's impairments are "severe"; Step 3, whether the impairments meet or equal a listing in the Listing of Impairments; Step 4, whether the claimant can still perform his past relevant work; and Step 5, whether significant numbers of other jobs exist in the national economy which the claimant can perform. As to the last step, the burden of proof

shifts from the claimant to the Commissioner. *See Jones v. Comm'r of Soc. Sec.,* 336 F.3d 469, 474 (6th Cir. 2003); *Preslar v. Sec'y of Health & Human Servs.,* 14 F.3d 1107, 1110 (6th Cir. 1994).

**B.     The ALJ's Determination**

Eligibility for DIB is dependent upon Plaintiff's ability to show that she became disabled on or prior to the "date last insured" ("DLI"). *Moon v. Sullivan*, 923 F.2d 1175, 1182 (6th Cir. 1990). The ALJ determined that Plaintiff's DLI was June 30, 2010. (Tr. 13). Therefore, Plaintiff must show that she was disabled on or before that date in order to receive DIB.[1] *See Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988).

At Step 1, the ALJ found that Plaintiff has not engaged in substantial gainful activity since her alleged onset date. (Tr. 13). At Step 2, he decided that Plaintiff has the following severe impairments: (1) major depressive disorder, (2) anxiety not otherwise specified, (3) learning disorder in reading, and (4) obesity. (Tr. 14). However, at Step 3, he concluded that Plaintiff does not have an impairment or combination of impairments listed in, or medically equal to, an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 14-17).

At Step 4, the ALJ determined that Plaintiff has the residual functional capacity ("RFC") to perform "a full range of work at all exertional levels," subject to the following

---

[1] A good portion of the medical evidence discussed in this case was obtained after Plaintiff's DLI. While the ALJ was free to regard such evidence as having "little probative value," *Strong v. Soc. Sec. Admin.*, 88 F.App'x 841, 845 (6th Cir. 2004), that is not what he chose to do. To the contrary, the ALJ's assessment of Plaintiff's RFC is based largely on medical opinions which were rendered shortly after her insured status had expired. *See Begley v. Mathews*, 544 F.2d 1345, 1354 (6th Cir.1976) ("Medical evidence of a subsequent condition of health, reasonably proximate to a preceding time, may be used to establish the existence of the same condition at the preceding time.").

limitations:

> no climbing of ropes, ladders and scaffolds; no exposure to industrial hazards; the claimant also requires entry level work with simple repetitive procedures; no frequent changes in work routines; no fast-paced assembly lines or rigid production quotas; no requirement for detailed or complex problem solving, independent planning or the setting of goals; should work in an object oriented environment with only occasional and casual contact with co-workers, supervisors or the general public.

(Tr. 17). He also found that Plaintiff was unable to perform any past relevant work, and therefore proceeded to the final step of the sequential evaluation. (Tr. 21).

At Step 5, the ALJ concluded that there are a significant number of jobs in the national economy that Plaintiff could perform. (*Id.*) The ALJ based this conclusion on testimony from a vocational expert ("VE"), in response to a hypothetical question assuming an individual of Plaintiff's age, education, work experience and RFC. (Tr. 22). Specifically, the VE testified that a hypothetical individual with Plaintiff's vocational profile and RFC could find work doing laundry (2,400 Kentucky/298,000 nationally), washing dishes (4,200 Kentucky/469,000 nationally), or as a cleaner (10,400 Kentucky/931,000 nationally). (*Id.*) Accordingly, the ALJ decided that Plaintiff had not been disabled "from August 12, 2008, through the date of this decision." (*Id.*)

## C. Plaintiff's Arguments

Plaintiff raises three arguments on appeal. She argues first that the ALJ failed to properly weigh Dr. Conner and Dr. Bokhari's medical opinions in accordance with the "treating physician rule." (Doc. # 12-1 at 1). Next, she contends that the ALJ erred in his assessment of Dr. Couch's opinion, a psychologist who performed a consultative

4

evaluation in August 2010.[2] (*Id.* at 2). Finally, she complains that "the ALJ unfairly characterized [her] abilities and activities and mischaracterized her testimony" from the administrative hearing in October 2012. (*Id.*) The Court will address each of these arguments in turn.

### 1. Although the ALJ erred in his application of the treating physician rule, the error in this instance was harmless.

In social security disability cases, the Commissioner depends on medical sources "to provide evidence, including opinions, on the nature and severity of a [claimant's] impairment(s)." 20 C.F.R. § 404.1527(d)(2). Such evidence may come from treating sources, non-treating sources and/or non-examining sources. 20 C.F.R. § 404.1502. A treating source is the claimant's "own physician, psychologist, or other acceptable medical source who provides [claimant], or has provided [claimant], with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with [claimant]." *Id.*

A treating source's opinion is entitled to controlling weight if it is "'well supported by medically acceptable clinical and laboratory diagnostic techniques' and 'not inconsistent with the other substantial evidence in the case record.'" *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004) (quoting 20 C.F.R. § 404.1527(d)(2)). If a treating source's opinion is not entitled to controlling weight, the ALJ must consider the following factors in determining how much weight to give the opinion: (1) the length of the treatment

---

[2] Plaintiff raises one additional argument in her Motion, stating that the ALJ failed to properly consider the Global Assessment of Functioning ("GAF") scores she received from Dr. Connor, Dr. Bokhari and Dr. Couch. (Doc. # 12-1 at 2). Rather than addressing this argument separately, the Court will consider it as a sub-issue in evaluating the first and second arguments.

5

relationship and the frequency of the examination; (2) the nature and extent of the treatment relationship; (3) the supportability of the opinion; (4) the consistency of the opinion with the record as a whole; and (5) the specialization of the treating source. *Id.*

In such situations, the ALJ must provide "good reasons" for the weight given to a treating source's opinion. 20 C.F.R. § 404.1527(d)(2). Therefore, "a decision denying benefits 'must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" *Wilson*, 378 F.3d at 544 (quoting Soc. Sec. Rul. 96-2p, 1996 WL 374188 at *5 (1996)). This additional requirement--often referred to as the "treating physician rule"--not only enables claimants to better understand the disposition of their case, it allows for meaningful review of the ALJ's decision-making process. *Wilson*, 378 F.3d at 544.

Failure to comply with the treating physician rule results in remand unless such failure constitutes harmless error. *Id.* at 547. One form of harmless error occurs where an ALJ neglects to properly weigh a treating source opinion, but adopts that opinion nonetheless, or makes findings consistent with it in determining whether a claimant is disabled. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 536 (6th Cir. 2001). In *Heston*, for instance, the ALJ provided no explanation at all regarding a three-page medical report prepared by the claimant's treating physician. *Id.* at 535-36. But because the relevant findings from that report were included in the hypothetical posed to the VE, the court held that remand was unwarranted. *Id.* In later decisions, the Sixth Circuit has reiterated "that

6

if the Commissioner adopts the opinion of the treating source or makes findings consistent with the opinion, it may be irrelevant that the ALJ did not give weight to the treating physician's opinion, and the failure to give reasons for not giving such weight is correspondingly irrelevant." *Wilson*, 378 F.3d at 544; *see also Cole v. Astrue*, 661 F.3d 931, 940 (6th Cir. 2011); *Friend v. Comm'r of Soc. Sec.*, 375 Fed. Appx. 543, 551 (6th Cir. 2010).

Here, Plaintiff was seen by two different treating physicians, Dr. Melissa Connor and Dr. Robina Bokhari.[3] Dr. Connor is a psychiatrist who met with Plaintiff regularly from April 2011 through July 2012. (Tr. 655-717). During several of their visits, she gave Plaintiff a GAF score of 50, and diagnosed her with "major depressive disorder." (*Id.*) She also completed a mental RFC assessment, which evaluated how Plaintiff's cognitive and emotional impairments would affect her ability to do work-related activities on a day-to-day basis. (Tr. 683). The assessment required Dr. Connor to rate Plaintiff in a number of areas using a scale that included four options: 1) Unlimited/Very Good, 2) Good, 3) Fair, and 4) Poor/None. (*Id.*) A "Fair" rating means that the claimant's "[a]bility to function in this area is seriously limited, but not precluded." (*Id.*) A "Good" rating means the claimant's "ability to function in this area is limited but satisfactory." (*Id.*) Dr. Connor rated Plaintiff's abilities as "Fair" in slightly over half of the areas tested, and as "Good" in the remaining areas.[4] (Tr. 683-85). She further explained that Plaintiff "struggles with irritability and

---

[3] The Commissioner concedes that Dr. Conner and Dr. Bokhari both qualify as treating physicians. (*See* Doc. # 13 at 11).

[4] Specifically, Dr. Connor rated Plaintiff's abilities as "Fair" in the following nine areas: 1) deal with the public, 2) interact with supervisors, 3) deal with work stress, 4) maintain attention or concentration, 5) understand, remember and carry out complex job instructions, 6) understand,

7

mood lability, making it difficult for her to maintain an appropriate manner in social situations." (Tr. 684).

Dr. Bokhari is also a psychiatrist. The record reflects that she treated Plaintiff on only two separate occasions, once on September 21, 2012, and again at a follow-up visit on October 4, 2012. (Tr. 722-25). During both encounters, she too assigned Plaintiff a GAF score of 50. (*Id.*) She also recorded that Plaintiff expressed issues with irritability, anger, depression and anxiety. (*Id.*) Though Dr. Bokhari made few medical findings of her own, she did describe Plaintiff's social skills as "limited." (*Id.*)

Plaintiff contends that remand is required because the ALJ failed to properly weigh the various limitations contained in Dr. Connor's mental RFC assessment. (Doc. # 12-1 at 9-10). "No reasons cannot be good reasons," she claims. (*Id.* at 10). Plaintiff takes the same position with respect to Dr. Bokhari, noting that "[t]he ALJ did not mention or discuss her findings" either, and that this was yet "another error on his part." (*Id.*) The Court has thoroughly reviewed the ALJ's decision and agrees that he did not abide by the treating physician rule with respect to Dr. Connor or Dr. Bokhari. Indeed, he failed to assign weight to either physicians' medical opinion, and discussed their findings only in the most cursory manner. However, such failure is harmless "if the [ALJ] adopts the opinion of the treating source or makes findings consistent with the opinion." *Cole*, 661 F.3d at 940. Because that is exactly what happened in this case, remand is not necessary.

At Step 4, the ALJ identified the following limitations with respect to Plaintiff's RFC:

[T]he claimant also requires entry level work with simple repetitive

---

remember and carry out detailed, but not complex job instructions, 7) behave in an emotionally stable manner, 8) relate predictably in social situations, and 9) demonstrate reliability. (Tr. 683-85)

8

>procedures; no frequent changes in work routines; no fast-paced assembly lines or rigid production quotas; no requirement for detailed or complex problem solving, independent planning or the setting of goals; should work in an object oriented environment with only occasional and casual contact with co-workers, supervisors or the general public.

(Tr. 17). The limitations above are effectively identical to those found in Dr. Connor's mental RFC assessment. *See supra* note 4. Both indicate that Plaintiff would struggle with complex problems and stressful situations, and that her interactions with supervisors, co-workers or the general public should be infrequent. Likewise, the ALJ's comments safely account for any of the findings contained in Dr. Bokhari's treatment notes, which do little more than suggest that Plaintiff is somewhat limited in her social functioning. Whether he meant to or not, the ALJ adopted the key findings of both physicians' medical opinions, and he later communicated those findings to the VE during step 5 of the sequential process.[5] Thus, in light of well-settled case law in this Circuit, the ALJ's failure to comply with the treating physician rule here amounts to nothing more than harmless error. *See Wilson*, 378 F.3d at 547-48 ("There was no reason to remand the case because, wittingly or not, the ALJ attributed to the claimant limitations consistent with those identified by the treating physician.").

Plaintiff also argues that the ALJ erred by disregarding the GAF scores she received from Dr. Connor and Dr. Bokhari. (Doc. # 12-1 at 10). Unlike the functional limitations discussed above, the GAF scores were not adopted by the ALJ in his description of Plaintiff's RFC, nor were they communicated to the VE during the administrative hearing. However, "[w]hile a GAF score may be of considerable help to the ALJ in formulating the

---

[5] The ALJ recounted his description of Plaintiff's RFC to the VE verbatim. (*See* Tr. 55-56).

9

RFC, it is not essential to the RFC's accuracy." *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 241 (6th Cir. 2002). And the Sixth Circuit has held that an ALJ's failure to reference a GAF score is not, by itself, sufficient cause for remand. *DeBoard v. Comm'r of Soc. Sec.*, 211 F. App'x 411, 415 (6th Cir. 2006) ("We have previously held that the failure to reference a Global Assessment Functioning score is not, standing alone, sufficient ground to reverse a disability determination."). Accordingly, Plaintiff's argument fails.

**2.     The ALJ did not error in his treatment of Dr. Couch's medical opinion**

In determining whether a claimant is disabled, the Commissioner must evaluate *every* opinion contained in the medical record. 20 C.F.R. § 404.1527(c) (emphasis added). The ALJ will decide how much weight to afford a particular opinion based on the factors identified in § 404.1527(c). *Id.* If the opinion is not from a treating source, the ALJ is not required to provide "good reasons" in support of his decision. *See id.*

Dr. Melissa Couch performed a consultative evaluation on August 24, 2012. (Tr. 472-77). During that evaluation, she recorded a GAF score of 50, administered a full scale I.Q. test and diagnosed Plaintiff with "major depressive disorder." (*Id.*) She also made several observations regarding Plaintiff's work-related limitations. In particular, she found that Plaintiff's ability to concentrate and persist was fair, as was her ability to adapt to change, perform complex functions and complete tasks in a timely fashion. (*Id.*) She also noted that Plaintiff's ability to cope with workplace stressors was "impaired," while her ability to meet deadlines or production quotas, solve problems and make decisions was poor. (*Id.*) In all other areas, Dr. Couch rated Plaintiff's abilities as good or fairly good. (*Id.*)

Plaintiff submits that the ALJ committed "reversible error" because "[h]e only discussed the part of Dr. Couch's opinion relating to her intellectual functioning." (Doc. # 12-1 at 13). In other words, she contends that remand is necessary because the ALJ failed to consider the various work-related limitations identified above. (*Id.*) However, the Court does not interpret the ALJ's decision as narrowly as Plaintiff does. In choosing to assign "little weight" to Dr. Couch's medical opinion, the ALJ observed that Plaintiff obtained her driver's license, completed high school and finished one semester of college, "earning A's and B's in school even while working at the veterinarian's office." (Tr. 20). He noted further that she could adequately express herself and that her reading deficiencies "would not prohibit [her] from engaging in basic work activities compatible with the residual functional capacity assigned." (*Id.*) Though Plaintiff insists that these statements pertain only to her intellectual abilities, the Court finds that they speak to the supportability of Dr. Couch's opinion in general, and the consistency of her findings--all of her findings--in relation to the record as a whole. Because the ALJ based his decision on the appropriate factors, and his analysis is sufficiently supported by the evidence, remand is unwarranted.[6]

As an additional point, the functional limitations in Dr. Couch's opinion are effectively the same as those identified in the ALJ's description of Plaintiff's RFC, which was duly communicated to the VE during step 5 of sequential process. Thus, even if the ALJ had

---

[6] Moreover, elsewhere in his decision, the ALJ observed that Plaintiff is able to care for her children and do household chores when necessary. (Tr. 15). He noted further that she goes to church, pays the bills and interacts with others in person and through social media. (*Id.*) These statements also cut against the supportability of Dr. Couch's opinion; the fact that they were not included in the same paragraph in which the ALJ assigned weight to Dr. Couch's opinion does not preclude them from being considered by the Court. *See Alaska Dep't of Envtl. Conservation v. EPA*, 540 U.S. 461, 497 (2004) (noting that even where an agency "explains its decision with less than ideal clarity," it must be upheld "if the agency's path may reasonably be discerned.").

failed to properly weigh those limitations in the body of his decision, such failure would be nothing more than harmless error.[7] *See Wilson*, 378 F.3d at 547-48.

Finally, Plaintiff takes the familiar position that the ALJ erred by failing to assign weight to the GAF score she received from Dr. Couch. However, as discussed above, a claimant's GAF score is not essential to the accuracy of her RFC, and, accordingly, the Sixth Circuit has held that failure to reference a GAF score does not provide sufficient grounds for reversal. *DeBoard*, 211 F. App'x at 415.

### 3. The ALJ reasonably assessed Plaintiff's credibility

When a claimant's complaints regarding the intensity and persistence of his or her symptoms are unsupported by objective medical evidence, the ALJ must make a credibility determination "based on a consideration of the entire case record." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007) (quoting Soc. Sec. Rul. 96-7p, 1996 WL 374186 at *4 (July 2, 1996)). "The entire case record includes any medical signs and lab findings, the claimant's own complaints of symptoms, any information provided by the treating physicians and others, as well as any other relevant evidence contained in the record." *Id.* Consistency between the claimant's complaints and the case record supports claimant's credibility while "inconsistency, although not necessarily defeating, should have

---

[7] Although harmless error is often referred to in the context of the treating physician rule, it stands to reason that the same principle would apply under these circumstances, particularly because the ALJ is held to a lower standard when evaluating the opinion of a non-treating source, such as Dr. Couch. Plus, as a general rule, courts "will not remand for further administrative proceedings unless the claimant has been prejudiced on the merits or deprived of substantial rights because of the agency's procedural lapses." *Rabbers v. Comm'r Soc. Sec. Admin.*, 582 F.3d 647, 654 (6th Cir. 2009). The Court admits that it was somewhat odd for the ALJ to afford "little weight" to Dr. Couch's opinion even though he adopted most, if not all, of her findings in determining Plaintiff's RFC, but that is simply what happened. In any event, because the functional limitations identified by Dr. Couch are sufficiently accounted for in Plaintiff's RFC, and the RFC was communicated verbatim to the VE during Step 5, Plaintiff has suffered no prejudice.

the opposite effect." *Id.* at 247-48. Credibility determinations cannot be based solely on intangible or intuitive notions. *Id.* at 247.

Once the ALJ makes a credibility determination, he must explain his decision with enough specificity "to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for the weight." *Id.* at 248 (quoting Soc. Sec. Rul. 96-7p, 1996 WL 374186, at *2 (Dec. 2, 1996)); *see also* 20 C.F.R. § 404.1529. *Id.* Blanket assertions that the claimant is not believable will not suffice, nor will credibility explanations "which are not consistent with the entire record and the weight of the relevant evidence." *Rogers,* 486 F.3d at 248. However, if the ALJ's credibility determination is properly explained, reviewing courts must give that determination great weight and deference. *Id.* at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant."); *Buxton v. Halter,* 246 F.3d 762, 773 (6th Cir. 2001) ("The ALJ's findings as to a claimant's credibility are entitled to deference, because of the ALJ's unique opportunity to observe the claimant and judge her subjective complaints.").

At Step 4, the ALJ found that Plaintiff's "subjective allegations of limitation are not fully credible and her description of the impact of her impairments on her ability to work is not consistent with the evidence." (Tr. 19). In support of this finding, he relied first on her behavior during the administrative hearing, noting that she did "not appear in any outward distress and she responded appropriately to questions without any indication of distraction due to any cause." (*Id.*) Next, he observed evidence that she cooks and shops, cares for two children under the age of four, and handles her personal hygiene and grooming

13

independently. (*Id.*) Finally, he emphasized that she does housecleaning and chores and regularly interacts with friends and family, both in person and through social media. (*Id.*) Earlier in his decision, the ALJ also noted evidence that Plaintiff works on crossword puzzles, attends church and, according to her husband and mother, "does well while on medication." (Tr. 15).

Plaintiff acknowledges that the ALJ supported his credibility decision with the various activities discussed above, yet she complains that he "leaves out every limiting factor she described when performing those activities." (Doc. # 12-1 at 11-12). Specifically, she takes issue with the ALJ's statement that she is able to shop, since her testimony was that she only went shopping if accompanied by her sister. (*Id.* at 12). She also objects to the ALJ's assertion that she is able to care for her children, since she explained during the hearing that she relies on family members and the preschool to help with that task. (*Id.* at 12). Relying primarily on *Rogers*,[8] Plaintiff submits that it was "error for the ALJ to mischaracterize [her] testimony regarding the scope of her daily activities." (*Id.*)

While Plaintiff's points are generally well-taken, they are nonetheless insufficient to justify remand. As illustrated above, the ALJ cited a number of reasons in his decision to discount Plaintiff's credibility, all of which support his position that her testimony was inconsistent with the record evidence. True, Plaintiff has demonstrated that two of those reasons were taken out of context, but even if the Court completely ignores those reasons, the ALJ's decision contains more than enough detail to facilitate meaningful review. The

---

[8] Plaintiff also cites *Gayheart v. Commissioner of Social Security*, 710 F.3d 365 (6th Cir. 2013). (*Id.* at 12). However, the Court has reviewed that decision and it does not address the issue of determining a claimant's credibility. Therefore, Plaintiff's reliance on *Gayheart* is misplaced.

14

balance of his analysis is based on relevant evidence contained within the case record, not blanket assertions or intuitive notions.  (*Id.* at 12).  And Plaintiff's contention that the ALJ cited only "minimal activity" in choosing to discount her statements is simply untrue. Considering the ALJ's detailed credibility assessment and the level of deference afforded on appeal, the Court concludes that his credibility determination is supported by substantial evidence.

### III. CONCLUSION

Accordingly, for the reasons stated herein, **IT IS ORDERED** as follows:

(1)    The decision of the Commissioner is found to be supported by substantial evidence and is hereby **AFFIRMED**;

(2)    Plaintiff's Motion for Summary Judgment (Doc. # 12) is hereby **DENIED**;

(3)    Defendant's Motion for Summary Judgment (Doc. # 13) is hereby **GRANTED**.

(4)    A Judgment in favor of Defendant Commissioner will be entered contemporaneously herewith.

This 18th day of July, 2015.



Signed By:
*David L. Bunning*   DB
United States District Judge

G:\DATA\SocialSecurity\MOOs\Lexington\14-267 Fox MOO.wpd